IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GONZALEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JOSE E. GONZALEZ, APPELLANT.

Filed November 16, 2021.    No. A-21-001.

Appeal from the District Court for Dakota County: BRYAN C. MEISMER, Judge. Affirmed.

Kenneth Jacobs, of Jacobs Alexander Law, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Jose E. Gonzalez appeals from an order of the district court for Dakota County granting the State's motion to dismiss his motion for DNA testing and denying his motion for relief under the DNA Testing Act, Neb. Rev. Stat. §§ 29-4116 to 29-4125 (Reissue 2016). Based on the reasons that follow, we affirm.

BACKGROUND

*Procedural History.*

In 2009, Gonzalez was convicted of first degree sexual assault of his stepdaughter. Thereafter, the district court sentenced Gonzalez to 30 to 32 years' imprisonment.

On direct appeal, this court affirmed Gonzalez's conviction and sentence. See *State v. Gonzalez*, No. A-10-179, 2010 WL 4241022 (Neb. App. Oct. 26, 2010) (selected for posting to

court Web site). The following facts are taken from our 2010 opinion addressing Gonzalez's direct appeal:

The State filed an information charging Gonzalez with first degree sexual assault pursuant to Neb. Rev. Stat. § 28-319 (Reissue 2008). In the information, the State alleged that Gonzalez subjected the victim, his 14-year-old stepdaughter, to sexual penetration during the time period between October 31, 2007, and October 31, 2008.

At trial, the State presented evidence that Gonzalez began sexually assaulting his stepdaughter during the summer of 2007. Although Gonzalez was not charged as a result of any incident that occurred prior to October 2007, the State introduced evidence of such incidents to demonstrate a continuous course of conduct by Gonzalez.

The victim testified that during the summer of 2007, Gonzalez would come to her room after she would go to bed and would attempt to kiss her on the face and on various parts of her body, including on the area "between her legs." The victim's testimony demonstrated that this behavior continued through October 2007.

The victim's testimony revealed that at various times between October 31, 2007, and October 31, 2008, Gonzalez would come into her room, usually at night, and take off her pants and underwear. She testified that Gonzalez would sometimes rub his penis on her vagina and that other times Gonzalez would "put his tongue in [her] vagina" or put his finger in her vagina. She testified that Gonzalez told her that he wished he could "make love" to her. She indicated that by October 2008, Gonzalez was coming into her room almost every night to touch her. At one point during this time period, Gonzalez told the victim that he knew what he was doing was wrong, but he was unable to control himself. The victim testified that Gonzalez never took off his clothes during these incidents.

The State also presented evidence that the victim underwent a sexual assault examination. The results of that examination revealed an irregularity in the victim's hymen. Such irregularity was described as a "notch," and testimony from medical personnel indicated that such a notch was consistent with the victim's account of what had happened between the victim and Gonzalez.

Gonzalez testified at trial. During his testimony, he denied ever inappropriately touching the victim. He testified that he was never alone with the victim and that he never had the opportunity to do the things she alleged had occurred. In addition, Gonzalez testified that the victim wanted to go live with her biological father. Through his testimony, he suggested that the victim had falsely accused him of hurting her so that she would be allowed to move.

After hearing all of the evidence, the jury convicted Gonzalez of first degree sexual assault. The district court subsequently sentenced Gonzalez to 30 to 32 years' imprisonment.

After the sentencing order was entered, Gonzalez timely filed a notice of appeal and an accompanying poverty affidavit. However, his counsel did not properly complete the poverty affidavit. As a result, this court dismissed the appeal for lack of jurisdiction. Subsequent to the dismissal of the appeal, Gonzalez filed a motion for postconviction relief arguing that his counsel was ineffective in failing to properly file an appeal. After a

hearing, the district court sustained the motion for postconviction relief. This direct appeal followed.

*State v. Gonzalez*, 2010 WL 4241022 at *1-2.

Following our affirmance on direct appeal, Gonzalez filed a second motion for postconviction relief, which the district court denied without an evidentiary hearing. Gonzalez appealed the denial of postconviction relief and we affirmed. See *State v. Gonzalez*, No. A-12-073, 2012 WL 3740570 (Neb. App. Aug. 28, 2012) (selected for posting to court Web site).

*Motion for DNA Testing.*

In 2015, Gonzalez filed a motion for DNA testing under the DNA Testing Act. He requested that certain items of evidence be tested or retested. A hearing was held in May 2017 on the matter and an order was entered in May 2019 denying the motion. Gonzalez filed an appeal and the case was remanded for reconsideration. In May 2020 the district court granted Gonzalez' motion for DNA testing, and DNA testing was subsequently completed by the Nebraska State Patrol Crime Lab on three items of evidence.

After receiving the lab results from the DNA testing, the State filed a motion to dismiss the proceeding, alleging that the results of the DNA testing offered no exculpatory evidence and, therefore, Gonzalez was not entitled to any further relief under the DNA Testing Act.

Gonzalez filed an objection to the State's motion to dismiss, as well as a motion for relief under § 29-4123, requesting a hearing and an order finding that the results of the DNA testing exonerate or exculpate him. Alternatively, he sought a new trial under Neb. Rev. Stat. § 29-2101 (Reissue 2016).

At a hearing on the motions, Heidi Ellingson, with the Nebraska State Patrol Crime Laboratory, testified about the testing she had done on the samples in this case and the results of the testing. She testified that she received three items for testing, referred to as 1.KR1, 1.KR3, and 1.KR4. Each of these items was a section cut from a different area of the victim's bedspread. These items were not tested during the original investigation. Ellingson also received two items that were reference samples from the victim and Gonzalez. She testified that she was asked to test the bedspread samples for saliva and DNA. The results of the testing showed all three samples were negative for the presence of saliva. Ellingson did additional DNA testing on two of the samples (1.KR1 and 1.KR3). The first one, 1.KR1, had an insufficient quantity of DNA detected and testing was stopped on that sample. From the second sample, 1.KR3, a female DNA profile was detected, as well as a male DNA profile. Ellingson was able to test the female DNA profile against the reference sample from the victim. The female DNA profile was consistent with the victim's DNA.

Subsequent testing, referred to as "YSRT" testing, was also completed on 1.KR1 and 1.KR3. On sample 1.KR1 no YSTR DNA profile was detected. On sample 1.KR3, a partial YSTR DNA profile was detected, but the profile was deemed uninterpretable due to a lack of genetic information. In other words, she was not able to compare the sample to Gonzalez' DNA to determine if he was included or excluded in that profile sample.

The State also offered Ellingson's laboratory reports containing the results of the testing into evidence. Both exhibits were received without objection.

The court took judicial notice of the court file, including the filings, motions, transcript, and bill of exceptions from the hearings in this matter, as requested by Gonzalez.

Following the hearing, the court granted the State's motion to dismiss and denied Gonzalez' motion for relief under § 29-4123. It determined that the testing results did not exonerate or exculpate Gonzalez. Further, the court found that the testing results were not otherwise sufficiently exculpatory to necessitate a new trial.

ASSIGNMENT OF ERROR

Gonzalez assigns, restated, that the district court erred in granting the State's motion to dismiss and in denying his request to vacate his conviction or in the alternative, his request for new trial.

STANDARD OF REVIEW

A motion to dismiss a proceeding under the DNA Testing Act after testing has been completed is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Amaya*, 305 Neb. 36, 938 N.W.2d 346 (2020).

An appellate court will uphold a trial court's findings of fact related to a motion for DNA testing unless such findings are clearly erroneous. *Id.*

ANALYSIS

Gonzalez assigns that the district court erred in granting the State's motion to dismiss and in denying his request to vacate his conviction or in the alternative, his request for new trial. Before addressing Gonzalez' arguments, we set forth the relevant parts of the DNA Testing Act.

*DNA Testing Act.*

Pursuant to § 29-4123(2), after receiving DNA test results, either party may request a hearing on whether the results "exonerate or exculpate the person." Following such a hearing, the court may, on its own or on the motion of either party, "vacate and set aside the judgment and release the person from custody based upon final testing results exonerating or exculpating the person." *Id.* If the court does not vacate and set aside the conviction, then § 29-4123(3) provides that "any party may file a motion for a new trial under sections 29-2101 to 29-2103."

As for when a court may vacate a conviction and release the person under § 29-4123(2), and when it may order a new trial under § 29-4123(3), the Nebraska Supreme Court has explained:

"[T]he court may vacate and set aside the judgment in circumstances where the DNA testing results are either completely exonerative or highly exculpatory--when the results, when considered with the evidence of the case which resulted in the underlying judgment, show a complete lack of evidence to establish an essential element of the crime charged. . . . This requires a finding that guilt cannot be sustained because the evidence is doubtful in character and completely lacking in probative value. . . . [I]n other circumstances where the evidence is merely exculpatory, the court may order a new trial if the newly discovered exculpatory DNA evidence is of such a nature that if it had been offered and admitted at the former trial, it probably would have produced a substantially different result."

- 4 -

*State v. Amaya*, 305 Neb. at 43-44, 938 N.W.2d at 352-53. Exculpatory evidence is "evidence which is favorable to the person in custody and material to the issue of the guilt of the person in custody." § 29-4119.

In this case, the State sought to dismiss the DNA testing proceeding after the DNA test results were obtained, arguing the results of the DNA testing did not exonerate or exculpate Gonzalez and he was not entitled to any relief. Gonzalez filed an objection to the State's motion to dismiss and requested a hearing and relief under § 29-4123, alleging that the DNA evidence provided evidence to exonerate him or at least provided exculpatory evidence to warrant a new trial.

*Gonzalez' Arguments.*

The three samples of the bedspread tested negative for saliva and after further DNA testing, the results only detected the presence of the victim's DNA. Although there was some indication of male DNA on one sample, it was not enough to compare against Gonzalez's DNA.

Gonzalez argues that the lack of saliva or other DNA evidence tying him to the victim's bedspread completely exonerates him or at least is exculpatory enough for the court to order a new trial. In support of his argument, Gonzalez relies on the testimony of a DNA analyst from the Nebraska State Crime Lab who testified at a 2017 hearing, as well as the victim's trial testimony. The DNA analyst testified that it was possible that enough saliva could be deposited on bedding during an occasion of oral sex to leave a testable residue amount. The victim testified that Gonzalez was subjecting her to oral sex and that by October 2008, Gonzalez was coming into her room almost every night. Gonzalez suggests that when the new DNA testing results are considered together with the testimony of the DNA analyst and the testimony of the victim, the evidence supports a conclusion that the acts he was accused of never occurred. Stated differently, he contends that if the victim's testimony is believed, there would be DNA evidence linking him to the crime scene. Therefore, he argues that the DNA testing results completely exonerate him and his conviction should be vacated. In the alternative, he suggests that had the newly discovered DNA evidence been admitted at trial, it would have produced a substantially different result, entitling him to a new trial.

The district court found that the new DNA results do not appear to be any more or less favorable to Gonzalez than the original testing. It noted that at the time of the original trial in 2009, there was no DNA evidence linking Gonzalez to the crime scene, and that remains the same after the testing of the three bedspread samples. The court concluded that the lack of DNA evidence was not material to the issue of Gonzalez' guilt. We agree.

The lack of DNA evidence linking Gonzalez to the bedspread in the new DNA results does not raise reasonable doubt as to whether Gonzalez sexually assaulted the victim as described at trial. As the district court found, there was no DNA evidence linking him to the crime scene at the time of the trial, so the DNA test results revealed nothing new.

The DNA analyst testified in 2017 that it was "possible" that enough saliva "could" be left on bedding during oral sex to leave enough residue for testing. Gonzalez does not allege that she testified differently. Thus, Gonzalez could have sexually assaulted the victim without leaving saliva on the bedspread. The fact that there was no saliva on the samples is not unexpected.

Further, the fact that there was no saliva or other DNA linked to Gonzalez on the three samples does not mean that there was no DNA on the entire bedspread; the testing only confirmed that there was no DNA on those particular samples. The Supreme Court has stated that DNA evidence is not a videotape of a crime, and the nonpresence of an individual's DNA profile in a biological sample does not preclude that individual from having been present or in possession of the item tested. Instead, such results would merely show the individual's DNA was not present in the specific biological sample tested. See *State v. Myers*, 304 Neb. 789, 937 N.W.2d 181 (2020), *cert. denied* ___ U.S. ___, 141 S. Ct. 287, 208 L. Ed. 2d 46.

The Supreme Court has also held that if DNA testing does not detect the presence of a prisoner's DNA on an item of evidence, such a result is at best inconclusive, especially when there is other credible evidence tying the defendant to the crime. *State v. Amaya*, 305 Neb. 36, 938 N.W.2d 346 (2020). When DNA test results are either inculpatory, inconclusive, or immaterial to the issue of a person's guilt, the results will not entitle the person to relief under the DNA Testing Act. *State v. Amaya, supra*. The results of the DNA testing in the present case did not detect the presence of Gonzalez' DNA and, therefore, the results were inconclusive and did not entitle Gonzalez to relief. Accordingly, the district court did not abuse its discretion in concluding Gonzalez was not entitled to have his convictions vacated nor was he entitled to a new trial because the DNA test results were neither exonerative nor exculpatory.

## CONCLUSION

The district court did not abuse its discretion in granting the State's motion to dismiss and denying Gonzalez' motion for relief under the DNA Testing Act. The order of the district court is affirmed.

AFFIRMED.